## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

|  |  |
|---|---|
| KELLY WYATT, ) | |
| ) | |
| *Plaintiff,* ) | Civil No. 1:16-cv-309 |
| ) | |
| v. ) | Hon. Liam O'Grady |
| ) | |
| 90 GRADOS RESTAURANT, SPORTS ) | |
| BAR & CLUB LLC *et al.,* ) | |
| ) | |
| *Defendants.* ) | |

### Memorandum Opinion

This action arises out of a shooting that occurred in the early morning hours of January 20, 2014, at 90 Grados Restaurant, Sports Bar & Club LLC ("90 Grados") in Manassas, Virginia. Ms. Wyatt was a victim of the shooting. She now seeks to hold 90 Grados liable for her injuries on theories of negligence per se, vicarious liability, negligent hiring and supervision, and premises liability. In addition to 90 Grados, Ms. Wyatt brings claims against two additional defendants, Ventura Investment Group, LLC ("Ventura") and SONNY Inc., d/b/a Security Solutions Group and Investigative Services ("SSGIS"). Ms. Wyatt was granted leave to amend her complaint on two occasions, and 90 Grados now moves to dismiss this third version of the complaint under Rule 12(b)(6). For the reasons that follow, this motion is **GRANTED**.

### I. BACKGROUND

**A.    Factual Background**

Defendant 90 Grados is a restaurant and bar operating with a mixed beverage liquor license in Manassas, Virginia. On Sunday, January 19, 2014, Bryant Banks hosted an event at

1

90 Grados—the "Big Banks Birthday Bash"—that was scheduled to run from 9:30 p.m. until 2 a.m. SSGIS and 90 Grados collected $20 from each person attending the Bash.

The party featured live entertainment by a DJ and two "go-go" bands—the Northeast Groovers and Private Affairs. According to the Complaint, the Northeast Groovers "are known to have a following that often includes persons that engage in criminal behavior and attract a rowdy crowd to their performance." Both Banks and the bands widely promoted the event on social media. Plaintiff Kelly Wyatt was a member of Private Affairs.

Because there would be live entertainment, 90 Grados had to comply with Prince William County zoning ordinances, including a requirement "to have a security plan and meet certain other conditions." *See* Code of Prince William County § 32-400.15 (General Provisions for Live Entertainment Uses). The Code's security plan sets a minimum level of guards present, requires that security and a manager be able to communicate, governs the location of the guards on the premises, provides for the minimum level of lighting necessary in a parking area, and sets last call. Banks hired SSGIS to provide security for the event, along with 90 Grados's security personnel. SSGIS provided eight uniformed security officers; four armed and four unarmed. By law, 90 Grados was also prohibited from "sell[ing] or permit[ting] to be consumed upon their premises any [alcohol] . . . [from] 2 a.m. to 6 a.m." 3 Va. Admin. Code § 5–50–30.

On the night of the event, "the crowd grew larger and larger." At 1:30 a.m., SSGIS personnel asked 90 Grados staff to give a "last call," but the staff failed to do so. Shortly before 2 a.m., the owner of SSGIS, Andre Hutchinson, looked for 90 Grados's "designated manager" to request that the sale and consumption of alcohol cease because SSGIS's security contract ended at 2 a.m., but management staff could not be located.

Mr. Hutchinson and SSGIS personnel "began to announce to patrons and bar staff that consumption and sales of alcoholic beverages had to cease." As SSGIS security "traveled through the crowded establishment ordering the bar to stop serving alcoholic beverages and requesting patrons to discard their beverages," Mr. Hutchinson encountered Jeremiah Pullen. Pullen "became belligerent" when he was told to discard his drink because he had recently purchased his beverage sometime around 2:00 a.m. When Pullen refused to throw out his drink, Mr. Hutchinson "sensed his hostility" and escorted him out of the establishment. When they reached the Restaurant exit, some patrons witnessed a "disturbance" between Mr. Pullen and security personnel. After the "disturbance," a security officer escorted Mr. Pullen to the adjacent parking lot where he had allegedly parked his vehicle. According to the complaint, "[t]he adjacent parking lot is dimly lit, and does not possess the necessary security personnel or lighting as prescribed under the Prince William Code § 32-400.15." Therefore, "patrons rely on the lighting along the foyer of Defendant's establishment to illuminate the entire surrounding areas."

Ms. Wyatt was returning from escorting her parents to their car and was in the vestibule of 90 Grados when multiple gunshots were fired into the entrance. Four people were shot, including Wyatt, who was hit in the leg. Pullen was later identified as the shooter. Wyatt was admitted to the INOVA hospital for treatment and was released the next day. Wyatt suffered permanent injury from the shooting. Bullet fragments remain in her leg and she lost her job with the U.S. Postal Service, among other injuries.

The Second Amended Complaint alleges that "[t]here were a few incidents that occurred prior to the shooting that served as the basis of this complaint." First, "security personnel remov[ed] an unruly patron a few hours before the scheduled closing time of 2:00 a.m." Second, Wyat reports "a physical altercation between two female patrons around 1:00 a.m." While these

events occurred, "the bands continued to perform and the bar continued to serve a very packed establishment. During some of these performances, some patrons in the crowd used their hands to represent gang affiliated signs."

### B.    Procedural History

Wyatt sued 90 Grados in the District of Maryland on four counts: (1) premises liability; (2) negligent hiring and supervision; (3) negligence per se; and (4) vicarious liability. She seeks at least $1,000,000 in damages as well as costs and fees. The District of Maryland transferred the case to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 9). The parties then filed three rounds of complaints and motions to dismiss. (Dkt. Nos. 14, 27, & 32).

## II. DISCUSSION

### A.    Standard of Review

On a motion to dismiss, a court must "assume all well-pled facts to be true and draw all reasonable inferences in favor of the plaintiff." *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (articulating the standard of review for motions to dismiss under Rule 12(b)(6)). Because this case was transferred from the District of Maryland under § 1404(a), the Maryland's choice-of-law provisions apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 600 (4th Cir. 2004). In tort cases, Maryland applies the rule of *lex loci delicti*. *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Because the asserted injury in this case occurred in Virginia, Virginia substantive law governs this action.

### B.    Legal Standard

All of Wyatt's claims fail for the same reason: they do not allege sufficient facts to show that Defendants had a legal duty to protect her from third-party criminal acts. Each of Plaintiff's

theories of recovery sounds in negligence, and for all negligence claims, a plaintiff must allege factual allegations sufficient to "establish the existence of a duty of care." *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 139 (Va. 2001). The existence of a duty is a question of law for the court to decide. *Id.* "Virginia strictly limits the circumstances in which a defendant has a duty to warn or protect another from the criminal acts of a third party." *Facchetti v. Bridgewater Coll.*, No. 5:15-cv-49, 2016 WL 1259415, at *8 (E.D. Va. March 30, 2016) (published opinion); *see also Roe v. Spotsylvania Mall Co.*, 145 F.3d 1325, 1998 WL 196615, at *2 (4th Cir. 1998) (table opinion) ("Virginia law perceives the third party's criminal action as a superseding cause of damages that obviates an invitor's potential duty to protect."). Thus, the baseline in Virginia is that "a person does not have a duty to warn or protect another from the criminal acts of a third person," and that "is particularly so when the third person commits acts of assaultive criminal behavior because such acts cannot reasonably be foreseen." *Virginia v. Peterson*, 749 S.E.2d 307, 311 (Va. 2013); *see also Burns v. Johnson*, 458 S.E. 2d 448, 450 (Va. 1995) (explaining that "[t]he law is settled on this subject").

In certain circumstances, however, Virginia courts have carved "narrow exceptions" to this general rule. *Id.* (quoting *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 432 (Va. 2006)). "It is worthy of note, however, that while recognizing these exceptions, [the Virginia Supreme Court] ha[s] rarely found the circumstances of the cases under review to warrant the application of these exceptions." *Yuzefovsky*, 540 S.E.2d at 139.

To fall within an exception, a plaintiff must allege as a threshold requirement the existence of a special relationship—"either between the plaintiff and the defendant or between the third party criminal actor and the defendant." *Peterson*, 749 S.E.2d at 311 (quoting *Yuzefovsky*, 540 S.E.2d at 139). The existence of a special relationship "create[s] a potential

duty on the defendant." *Taboada*, 626 S.E.2d at 433. In addition, a plaintiff must "establish that the special relationship creates a duty of care, such as to warn and/or protect the plaintiff, as a result of the particular circumstances of that special relationship" by pleading facts that establish the harm was foreseeable. *Yuzefovsky*, 540 S.E.2d at 140.

The degree of foreseeability required to impose a duty depends on the type of the special relationship at issue. *Peterson*, 749 S.E.2d at 311. Virginia recognizes "two levels of foreseeable harm: (1) known or reasonably foreseeable harm; and (2) imminent probability of harm." *Id.* (internal citation and quotations omitted). The more lenient standard—known or reasonably foreseeable—applies to relationships "such as that of a common carrier/passenger, innkeeper/guest, and employer/employee" that have traditionally imposed the highest duties. *Id.* The "imminent probability of harm" standard governs when the relationship is "that of business owner/invitee or landlord/tenant." *Id.* at 312. Under this more demanding standard, a duty to warn or protect arises only "where the defendant knows that criminal assaults against the person are occurring, or are about to occur, on the premises, based upon notice of a specific danger just prior to the assault." *Id.*

The parties agree that a business owner/invitee relationship existed in this case, and therefore the "imminent probability of harm" standard applies.[1] *See* Compl. ¶ 84; Opp'n at 5 (stating that "a special relationship exists between a business owner and its invitee, such as 90 Grados and Wyatt"); *see also* Def's Mem. in Supp. of Mot. to Dismiss at 8. Under Virginia law, prior criminal activity must be pervasive and well-known in order to satisfy the imminent probability standard. *See Yuzefovsky*, 540 S.E.2d at 141 (holding defendant apartment owner

---

[1] The Court agrees with this characterization of the parties' relationship, however, even under the "known or reasonably foreseeable" standard, Plaintiff's claims would similarly fail. *See Connell's Ex'rs v. Chesapeake & O. Ry. Co.*, 24 S.E. 467, 469 (Va. 1896); *A.H. v. Rockingham Pub. Co., Inc.*, 495 S.E.2d 482, 486 (Va. 1998); *Facchetti v. Bridgewater Coll.*, No. 5:15-cv-49, 2016 WL 1259415, at *8 (W.D. Va. March 30, 2016); *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 434 (Va. 2006).

liable where, contrary to its explicit representations to plaintiff, there had been 656 crimes, including 113 crimes against persons, in the vicinity of the apartment complex in one year). Even relatively frequent and recent criminal activity at a business location will not necessarily establish a duty to invitees. *See Wright v. Webb*, 362 S.E.2d 919, 922 (Va. 1987) (finding a motel owner not liable for criminal assault on invitee in poorly lit parking lot despite frequent larcenies (about two per month in the past year) and a prior double homicide and physical assault in the previous three years). Finally, when a separate criminal act immediately precedes plaintiff's injury, "notice of a specific danger" is still necessary in order to establish a duty. *Burns v. Johnson*, 458 S.E. 2d at 40 (determining that gas station owner did not have a duty to plaintiff where an individual making sexual advances to a store clerk abducted and raped the plaintiff 15 minutes after the incident).

### C.     Application

Wyatt must allege facts that, if proven, would establish an exception to the general rule that a business owner does not owe a duty to warn or protect its invitee from third-party criminal acts.[2] Therefore, the critical question is whether Wyatt pleaded the requisite heightened degree of foreseeability. Specifically, were there facts to show that 90 Grados "kn[ew] that criminal assaults against persons [were] occurring, or [were] about to occur, on the premises which indicate[d] an imminent probability of harm to an invitee[?]" *Yezefovsky*, 540 S.E.2d at 141 (internal quotation marks omitted).

The facts alleged in the complaint fall far short of alleging imminent probability. Wyatt has only the following facts: (1) 90 Grados's "method of business, as a bar, lounge and club, attracts or provides a climate for assaultive crimes"; (2) 90 Grados "knew of the inadequate

---

[2] Neither Plaintiff's Complaint nor her argument provides any facts sufficient to reasonably suggest that Defendants Sonny's or Ventura Investment, Group, LLC owed plaintiff any duty. Therefore, this discussion will focus on Defendant 90 Grados, whose position as the host of the party makes the existence of a duty more likely.

lighting and failed to provide security in the parking lot"; (3) Wyatt "did not and could not discover the risk of Mr. Pullen, even with ordinary care, as the parking lot was dark and not secured by staff"; and (4) 90 Grados "failed to provide security surrounding the premises, including the parking area, as it had knowledge of inadequate lighting"; (5) 90 Grados sold and permitted consumption of alcohol after 2 a.m.; (6) 90 Grados did not make a "last call" announcement; and (7) there were "a few incidents of unruly patron behavior"—the removal of another patron and the physical altercation between two female patrons—that occurred the same night; and (8) Pullen "became belligerent" when he was told to throw out his drink and, "sensing his hostility," security escorted him out of the bar. These facts are clearly insufficient to establish a duty under Virginia law.

Even the most favorable reading of Wyatt's argument depends heavily on the two prior incidents that occurred the same night. At the outset, it is not apparent from the complaint that those incidents amounted to criminal activity. While Wyatt's opposition labels them "criminal," the complaint does not. Compl. ¶¶ 15-16 (characterizing them as "a few incidents," one of which included "unruly patron" behavior"); *see also* Opp'n at 5-6. The "removal of an unruly patron" from a bar, without more, is a common occurrence that cannot be said to put the bar owner on notice of anything. Even the allegation of a "physical altercation" is not necessarily a criminal act. *See Harrison v. Bittler*, 72 Va. Cir. 7, 2006 WL 3377913, at *4 (Va. Cir. Ct. 2006) ("An allegation of a 'physical altercation' is not necessarily an allegation of a criminal assault."). Nor could these "incidents" be characterized as similar prior crimes. Had there been a shooting earlier that same night, then Wyatt may have a case.[3]

---

[3] Even then, however, she would still need to show "notice of a *specific* danger." *Burns v. Johnson*, 458 S.E. 2d at 40 (emphasis added).

In fact, Wyatt also makes no allegations of any prior criminal activity, much less shootings, ever having occurred at 90 Grados prior to the night of Banks's party. Moreover, neither of these "prior incidents" involved Pullen. The complaint contains no allegations that Pullen was known to 90 Grados or SSGIS or that he had a history of violent assaults. Further, the fact that Pullen was removed from the bar after refusing to throw away his drink cannot have put 90 Grados on notice of an imminent probability of harm. *Cf. Hunt v. Kroger Ltd.*, 2006 WL 1724570, at *3 (W.D. Va. 2006) ("Intoxicated persons such as [third-party criminal] can be harassing but verbal annoyance or harassment would not lead a reasonable person to conclude that such a person is an imminent threat to their physical well-being . . . ."). There are no allegations that Pullen made any threats on his way out or that he in any way suggested he would return with a gun. In short, imposing a duty in this case would mean that any bar with a large crowd would have a duty to protect patrons from a third-party shooter whenever its staff threw an intoxicated patron out of the bar and had witnessed "prior incidents" that same evening. That result runs contrary to the "settled" law of Virginia, as it would dramatically expand tort liability for all bar and restaurant owners. *Burns*, 458 S.E. 2d at 450.

In her opposition, Wyatt attempts to use *Dudas* and *Peterson* (both cases where the Virginia Supreme Court held no duty existed) to make two arguments for why a duty exists in this case. She first argues that the proximity of the two prior incidents to the shooting distinguishes this case from others. For the reasons already stated, reliance on the two prior incidents is unavailing, but her proximity argument also fails.

For starters, Wyatt misstates the facts of *Dudas*. There, the plaintiff was a golfer who was robbed and shot on the defendant's golf course. Two robberies, one involving gunfire, had occurred in the month prior, and another more than a year before. Neither of the assailants in

those crimes had been apprehended. The court concluded that it was not a "level of criminal activity" that would "have led a reasonable business owner to conclude that its invitees were in *imminent danger* of criminal assault and there was certainly nothing to indicate that [plaintiff] in particular was in danger." 540 S.E.2d at 133. Wyatt incorrectly states that the last criminal act in *Dudas* occurred over a year before the plaintiff was assaulted, and then argues her case is distinguishable because the "incidents occurred during the same event, and not a year prior to the assault of the Plaintiff." Opp'n at 8-9. But what the court actually said was: "Prior to the two robberies and one attempted robbery [that occurred in the month prior], it had been over a year since there had been any similar criminal activity on Glenwood Golf Course's premises." *Dudas*, 540 S.E.2d at 131.

Thus, for *Dudas* to be of any help to Wyatt, it would have to be the case that two dissimilar, seemingly noncriminal "incidents" that occurred on the same night as a shooting evidences a greater degree of foreseeability than two armed robberies occurring in the same month as another almost identical armed robbery. If that is not enough, *Peterson* also severely undermines Wyatt's proximity argument. There, state officials knew that two students had been shot, one fatally and one critically, in a dormitory on campus and that the shooter had not been apprehended. That same day, the same shooter went on to murder numerous additional victims. Even so, the Virginia Supreme Court found that those later crimes were not reasonably foreseeable.

Wyatt's second argument is that the type of establishment is material to considering whether a duty existed. Specifically, she contends that, on the night in question, 90 Grados was operating a "nightclub" with live performances and alcohol which "established an atmosphere of potential harm amongst patrons." Opp'n at 8-9 ("[It] was an environment that attracted

10

assaultive crimes."). This argument stems from language in *Wright v. Webb*, 362 S.E.2d 919

(Va. 1987), where the court said: "We hold that a business invitor, *whose method of business*

*does not attract or provide a climate for assaultive crimes*, does not have a duty to take measures

to protect an invitee against criminal assault unless he knows that criminal assaults against

persons are occurring, or are about to occur, on the premises which indicate an imminent

probability of harm to an invitee."[4] *Id.* at 922.  There is not a lot of Virginia case law

interpreting that piece of the *Wright* opinion. *See Stevens v. Byrd*, 49 Va. Cir. 410 (Va. Cir. Ct.

1999) (stating that a business owes a duty if its "method of business attracts or provides a climate

for criminal assaults").  But federal courts have construed it to mean that "assault-fostering

businesses are those in which the business enterprise itself is particularly solicitous of,

encouraging of, or benefiting from, assaultive behavior." *Roe v. Spotsylvania Mall Co.*, 145 F.3d

1325 (4th Cir. 1998); *Rosen v. Red Roof Inns, Inc.*, 950 F. Supp. 156, 161 (E.D. Va. 1997);

*Godfrey v. Boddie-Noell Enters., Inc.*, 843 F. Supp. 114, 123 (E.D. Va. 1994) ("The *Wright* court

must have intended a business which incorporates a criminal element directly or indirectly into

its method of conducting business, in other words, a business which somehow directly benefits

from the presence of criminal or assaultive behavior."), *aff'd*, 46 F.3d 1124 (4th Cir.1995); *Fant

v. Wal-Mart Stores, Inc.*, No. 3:15-cv-474, 2015 WL 5841383, at \*2 n.1 (E.D. Va. Oct. 7, 2015),

*aff'd*, 2016 WL 770873 (4th Cir. Feb. 29, 2016).  There are no allegations in the complaint that

90 Grados was such an enterprise.  To find otherwise would sweep an unknown number of bars,

restaurants, and concert venues within this exception and threaten to swallow the rule.

---

[4] Wyatt's opposition again misstates the *Dudas* opinion in relation to this argument. She states that the court "*held*" that a golf course is not the type of business that attracted assaultive crimes." Opp'n at 8. While the *trial court* considered that fact relying on language in *Wright*, *see Dudas*, 540 S.E.2d at 131, it was not part of the *Supreme Court's* analysis of the existence of the golf course's duty. What *Dudas* did consider, in addition to foreseeability of imminent danger, was "the magnitude of the burden of guarding against harm to the plaintiff and the consequences of placing that burden on the business owner before imposing a duty to protect its invitees." *Id.* at 140 (internal quotations and alterations omitted).  The court concluded it "would have been unduly burdensome to require Glenwood Golf Club to post a security force for [plaintiff's] protection." *Id.* at 141.

In sum, Wyatt cannot hold 90 Grados liable for her injuries based on her status as invitee because no legal duty existed to protect her from a third-party shooting. This case falls squarely within the general rule that "[i]n ordinary circumstances, acts of assaultive behavior by third persons cannot reasonably be foreseen." *A.H.*, 495 S.E.2d at 486. There are no facts alleged that would have put 90 Grados on notice of an imminent probability of Pullen's crime. As such, Wyatt's negligence-based claims all fail.

### III. CONCLUSION

Wyatt's claims are undermined by her failure to plead facts that establish a legal duty, even after being given leave to amend her complaint on two separate occasions. The Virginia Supreme Court has articulated a forceful presumption against holding businesses liable for third-party criminal acts, and under the facts of this case, 90 Grados is entitled to the protections of that law.

Therefore Defendants' Motion to Dismiss is hereby **GRANTED** with prejudice. An appropriate order shall issue.

_____
Liam O'Grady
United States District Judge

November 7, 2016
Alexandria, Virginia

12